IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
April 22, 2008 Session

## STATE OF TENNESSEE v. JENNIFER LYNN STINNETT

**Appeal from the Circuit Court for Marshall County**
**Nos. 17341, 17342, 17343     Robert Crigler, Judge**

_____

**No. M2007-01802-CCA-R3-CD - Filed July 2, 2008**

_____

The Defendant, Jennifer Lynn Stinnett, appeals from the sentencing decision of the Marshall County Circuit Court. The Defendant was indicted for over two hundred offenses (Class D and E felonies and Class C misdemeanors) as a consequence of her scheme to unlawfully obtain prescription drugs. She subsequently pled guilty as charged. Following a sentencing hearing, the trial court imposed an effective twelve-year sentence and ordered the Defendant to serve 365 days in jail, followed by probation for the remainder of her sentence. On appeal, the Defendant argues that the trial court erred in denying her request for full probation. After a review of the record, we find no error in the denial of total probation. We remand for entry of corrected judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed;**
**Remanded**

DAVID H. WELLES, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT W. WEDEMEYER, JJ., joined.

Raymond W. Fraley, Jr., Fayetteville, Tennessee, for the appellant, Jennifer Lynn Stinnett.

Robert E. Cooper, Jr., Attorney General and Reporter; Cameron L. Hyder, Assistant Attorney General; Charles Crawford, District Attorney General; and Weakley E. Barnard, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

#### Factual Background

During the July 2006 session of the Marshall County Grand Jury, three separate indictments were returned against the Defendant alleging she obtained prescription drugs by fraud and stole drugs from the dentist's office in which she worked, resulting in a total of 209 charges. These offenses occurred over a period of time from March 2003 to May 2006.

In case number 17341, the Defendant was indicted for 104 counts of obtaining controlled substances by fraud in violation of Tennessee Code Annotated section 53-11-402, Class D felonies; 1 count of theft of property valued at $1,000 or more but less than $10,000 in violation of Tennessee Code Annotated section 39-14-103, a Class D felony; and 74 counts of obtaining legend drugs by fraud in violation of Tennessee Code Annotated section 53-10-104, Class C misdemeanors. The grand jury returned indictment 17342 against the Defendant charging her with three counts of obtaining controlled substances by fraud, three counts of obtaining legend drugs by fraud, and three counts of TennCare fraud under Tennessee Code Annotated section 71-5-2601(a)(2)(A), Class E felonies. The third indictment, number 17343, charged the Defendant with seven counts of obtaining controlled substances by fraud, seven counts of obtaining legend drugs by fraud, and seven counts of TennCare fraud. Included as co-defendants in the TennCare fraud counts were Pamela Shantel, Jett Roden, and Ann Luna Jett.

The Defendant entered open pleas to all three indictments on December 5, 2006. At the guilty plea hearing, the State recounted the following facts supporting the Defendant's convictions:

Yes, sir, please the [c]ourt, Your Honor, I would start with case 17341.

. . . [The Defendant] was employed at the dentist office of Dr. Larry Thomas here in Lewisburg, Tennessee. And if this case went to trial the State has a witness available and to show that this occurred in Marshall County, Tennessee.

That during the dates alleged in the indictments that [the Defendant] obtained Lortabs from basically two different sources. One was from the Sullivan[-Schein] Dental Company or Henry [Schein] Company doing business as Sullivan[-Schein] Dental, which was a mail order company that provided that doctor's office with dental supplies and medication.

That she would order Lortabs from the company and then arrange to pick them up from the UPS drivers in different locations here in the city of Lewisburg.

Also at the same time she was calling in prescriptions for Lortabs and legend drugs into local pharmacies, I believe, every pharmacy here in town and ordering prescriptions or calling in prescription[s] for different individuals and then going and picking them up or having them go and pick[] them up.

. . . .

Then in case 17342, in a way there is a co-defendant in this case who is Pamela [Shantel Jett] Roden, who is either a cousin or she is related to [the Defendant]. [The Defendant], using her position with the dental office, was calling in drugs into various pharmacies in town in Ms. Roden's name and Ms. Roden would go and pick the prescriptions up.

-2-

Ms. Roden would pay for the prescriptions with her TennCare benefits.

Then in 17343, it is a similar situation but if you want to call her a co-conspirator, was Ann Luna Jett, who is [the Defendant's] step-mother.

Once again [the Defendant] would use her position with the dentist's office to call in prescriptions in her step-mother's name and her step-mother would go and pick up the prescription and pay for the prescription with her TennCare benefits.

Detective Carol Jean, with the Lewisburg City Police Department at that time, interviewed [the Defendant] and [the Defendant] gave a statement implicating herself in these crimes.

A sentencing hearing was held on January 24, 2007. At the beginning of the hearing, the State entered the presentence report into evidence as an exhibit. The report shows that, at the time of the sentencing hearing, the Defendant was twenty-eight years old and had no prior criminal history. She had a one-year-old daughter.

Beth Flatt of the Tennessee Department of Probation and Parole testified that she prepared a presentence report for the Defendant. At the time of these offenses, the Defendant was employed a "majority of that time" by a Dr. Larry Thomas, at Tri-Counties Dentistry, as a dental assistant. She was employed with Dr. Thomas from January 15, 2003, to December 16, 2005. According to Ms. Flatt, the Defendant started calling in prescriptions about two months after she started working for Dr. Thomas. Even after the Defendant was no longer employed by Dr. Thomas, she continued to use his office to order prescriptions.

The Defendant called in prescriptions to six different pharmacies in the Lewisburg area—Kroger, Wal-Mart, the Medicine Shoppe, Walgreen's, Fred's, and H & S Pharmacy. Ms. Flatt noted that the Defendant made a statement to authorities on May 15, 2006, but nonetheless, on the following day, she again obtained another fraudulent prescription.

Detective Carol Jean of the Lewisburg Police Department testified that she was the lead investigator in the Defendant's case. When asked how she became involved with this case, she responded that she received a call from Dr. Thomas' wife. Mrs. Thomas informed the detective that the dental office had received a letter from the Schein Company stating that the office was reaching its maximum limit of Lortabs. This alerted Dr. Thomas to the fact that the Defendant made purchases of Lortabs by using the dental office and intercepted those packages from the United Parcel Service (UPS) drivers.

During her investigation, Det. Jean learned that, in addition to receiving pills from UPS, the Defendant had also stolen some drugs from Dr. Thomas' office and had called in prescriptions to local pharmacies. According to the best of her "ability," Det. Jean stated that the Defendant received 3,700 Lortabs through UPS and 1,536 from local pharmacies, totaling 5,236 Lortabs in all. She

received the 3,700 Lortabs from UPS during a three-month time frame. The Defendant also unlawfully obtained 1,113 "antibiotics types." Detective Jean had "no way" to know how many pills the Defendant had taken from Dr. Thomas' office.

When asked if the Defendant ordered and consumed pills during her pregnancy, Det. Jean answered in the affirmative. Detective Jean confirmed that there were others involved in the Defendant's scheme, that the Defendant would call in prescriptions using other relatives' names, and that TennCare fraud was involved in obtaining some of the prescriptions. Detective Jean also stated that Lortab is a common drug "sought out by people on the street." Finally, it was noted that the presentence report listed the amount of orders from the Schein Company at $1,005.49.

Doctor Thomas provided a victim impact statement wherein he conveyed that his business could have been affected in a negative way by the Defendant's actions and expressed his disappointment and "heartbreak" over the Defendant's actions. Three pharmacies supplied victim impact statements—Fred's, the Medicine Shoppe, and H & S—stating their frustration and disappointment with the Defendant and requesting that she be punished for her actions. The presentence report also included statements from pharmacy employees, Tri-Counties Dentistry employees, and UPS employees.

The Defendant called Reverend Don Noble of the Berlin United Methodist Church on her behalf. He testified that the Defendant had been a member of his church since June 2006 but that she had attended prior to that time. Reverend Noble had provided counseling to the Defendant in the seven to eight months leading up to the hearing. He stated that he had noticed that the Defendant had stopped denying some "contradictory" behaviors and that she appeared to be a kind and loving mother and very responsible. On cross-examination, Rev. Noble acknowledged that the Defendant previously denied responsibility for the forged prescriptions, claiming instead that she had been framed.

Mr. Bruce Kimball testified that he had been a member of the Berlin United Methodist Church and had been a recovering alcoholic since 1985. Mr. Kimball had been counseling and working with the Defendant.

The Defendant made an allocution statement. She admitted her "wrongdoings" and stated that she was sorry for all the people she had hurt and involved in her "mess." She requested a chance to be a good mother and wife. She also noted that she had received counseling from her preacher and church members and that she attended church regularly. Finally, she admitted that she had a drug problem and "was willing to do whatever it takes to become a better person . . . ."

Following the conclusion of proof, the trial court determined that three enhancement factors applied: (1) The offense involved more than one victim; (2) The offense was committed to gratify the Defendant's desire for pleasure or excitement; and (3) The Defendant abused a position of public or private trust. See Tenn. Code Ann. § 40-35-114(3), (7), (14). The trial court also found that one

-4-

mitigating factor applied:  The Defendant's criminal conduct neither caused nor threatened serious bodily injury.  See Tenn. Code Ann. § 40-35-113(1).

The trial court heard additional argument on March 21, 2007.  Defense counsel noted that two other similarly-situated defendants, Christy H. Prier and Pamela Denise Wells,[1] had received effective eight-year probationary sentences for their crimes.  Ann Luna Jett also received a six-year sentence that was probated.

At the conclusion of the March 21 hearing, the trial court additionally concluded that the Defendant was a leader in the commission of an offense involving two or more criminal actors.  See Tenn. Code Ann. § 40-35-114(2).  The trial court then imposed an effective twelve-year sentence as a Range I, standard offender.[2]

The trial court also differentiated this case from the Wells, Prier, and Jett cases:

The Wells and the Prier case, and the Jett case, . . were all agreed to sentences, as to the length of sentences.  This is the one case that I have completely an open plea, so there is a distinction between that.

[The Defendant] has more charges than they do, although they did have a number of charges.

Finally, the trial court addressed the Defendant's request for total probation.  The trial court considered the enhancement factors in determining the manner of service, specifically noting that the Defendant was the leader in the commission of the offenses.  The trial court further stated that the Defendant was amenable to correction, having no criminal record and a good social history.  Thereafter, the trial court, "considering the number of offenses as well as the length of time over which these offenses were committed," denied full probation.  The court found that confinement was necessary to avoid depreciating the seriousness of the offense and that confinement was particularly suited to provide an effective deterrence to others likely to commit similar offenses.  See Tenn. Code Ann. § 40-35-103(1)(B).  The trial court ordered that the Defendant serve 365 days in confinement before being placed on probation.

This appeal followed.

---

[1] Both of these ladies worked for a dentist by the name of Wesley Winchell.  Both had obtained prescription medication by calling in fraudulent prescriptions.  According to the March 21 transcript, Pamela Wells was indicted with eighty-four counts, and Christy Prier was indicted with seventy-four to ninety-four counts.

[2] The trial court imposed two-year sentences on all of the Class D and E felonies.  All of the counts involving each individual pharmacy were run concurrently with one another, and each effective two-year sentence involving the six pharmacies were run consecutively to each other, resulting in an effective twelve-year sentence.  The theft count and counts involving the Henry Schein Company were to be run concurrently with the Kroger Pharmacy convictions.

**ANALYSIS**

The Defendant appeals from the trial judge's denial of full probation. She also argues that the trial court erred by sentencing her to serve 365 days "while granting full probation to other similarly situated defendants before the court."

Before a trial court imposes a sentence upon a convicted criminal defendant, it must consider (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; (f) any statistical information provided by the Administrative Office of the Courts as to Tennessee sentencing practices for similar offenses; and (g) any statement the defendant wishes to make in the defendant's own behalf about sentencing. Tenn. Code Ann. § 40-35-210(b);[3] see also State v. Carter, -- S.W.3d --, No. M2005-02784-SC-R11-CD, 2008 WL 2081247, at *7 (Tenn. May 19, 2008); State v. Imfeld, 70 S.W.3d 698, 704 (Tenn. 2002). The 2005 revision to section -210 increases the amount of discretion a trial court exercises when imposing a sentencing term. Carter, 2008 WL 2081247, at *8. To facilitate appellate review, the trial court is required to place on the record its reasons for imposing the specific sentence, including the identification of the mitigating and enhancement factors found, the specific facts supporting each enhancement factor found, and the method by which the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. See Carter, 2008 WL 2081247, at *7; State v. Samuels, 44 S.W.3d 489, 492 (Tenn. 2001).

Upon a challenge to the sentence imposed, this Court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. See Tenn. Code Ann. § 40-35-401(d). However, this presumption "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991); see also Carter, 2008 WL 2081247, at *8. If our review reflects that the trial court applied inappropriate mitigating and/or enhancement factors or otherwise failed to follow the Sentencing Act, the presumption of correctness fails and our review is de novo. Carter, 2008 WL 2081247, at *8. We will uphold the sentence imposed by the trial court if (1) the sentence complies with the purposes and principles of the Sentencing Act and (2) the trial court's findings are adequately supported by the record. See State v. Arnett, 49 S.W.3d 250, 257 (Tenn. 2001). The burden of showing that a sentence is improper is upon the appealing party. See Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments; Arnett, 49 S.W.3d at 257.

---

[3] The Defendant's crimes in this case span the 2005 amendments to our sentencing law, occurring from March 2003 to May 2006. For purposes of this opinion, we have cited to the revised version of the statutes. We have done so because the 2005 revisions to our sentencing law do not affect the ultimate outcome of this case—whether the Defendant has demonstrated her suitability to full probation. We feel it is unnecessary to discuss these revisions at length because our resolution of the issue—the denial of full probation—would be the same under the law both before and after the 2005 revisions.

A defendant who does not possess a criminal history showing a clear disregard for society's laws and morals, who has not failed past rehabilitation efforts, and who "is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary. A court shall consider, but is not bound by, this advisory sentencing guideline." Tenn. Code Ann. § 40-35-102(6). No longer is any defendant entitled to a presumption that he or she is a favorable candidate for probation. Carter, 2008 WL 2081247, at *10. The following considerations provide guidance regarding what constitutes "evidence to the contrary":

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant . . . .

Tenn. Code Ann. § 40-35-103(1); see also Carter, 2008 WL 2081247, at *11.

Additionally, the principles of sentencing reflect that the sentence should be no greater than that deserved for the offense committed and should be the least severe measure necessary to achieve the purposes for which the sentence is imposed. Tenn. Code Ann. § 40-35-103(2), (4). The court should also consider the defendant's potential for rehabilitation or treatment in determining the appropriate sentence. Tenn. Code Ann. § 40-35-103(5).

Because the Defendant was convicted of Class D and E felonies, she should be considered as a favorable candidate for alternative sentencing. See Tenn. Code Ann. § 40-35-102(6). We note, however, that "the determination of whether the Appellant is entitled to an alternative sentence and whether the Appellant is entitled to full probation are different inquiries." State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). The defendant has the burden of establishing his or her suitability for full probation, even if the defendant should be considered a favorable candidate for alternative sentencing. Id.; see Boggs, 932 S.W.2d at 477.

The Defendant is eligible for probation because her actual sentence was less than ten years and the offenses for which she was sentenced are not specifically excluded by statute. See Tenn. Code Ann. § 40-35-303(a). The trial court shall automatically consider probation as a sentencing alternative for eligible defendants; however, the defendant bears the burden of proving his or her suitability for probation. See Tenn. Code Ann. § 40-35-303(b); see also Carter, 2008 WL 2081247, at *10. No criminal defendant is automatically entitled to probation as a matter of law. See Tenn. Code Ann. § 40-35-303(b), Sentencing Commission Comments; State v. Davis, 940 S.W.2d 558, 559 (Tenn. 1997). Rather, the defendant must demonstrate that probation would serve the ends of

justice and the best interests of both the public and the defendant. See Carter, 2008 WL 2081247, at *10; State v. Souder, 105 S.W.3d 602, 607 (Tenn. Crim. App. 2002).

In determining whether to grant probation, the court must consider the nature and circumstances of the offense; the defendant's criminal record; his or her background and social history; his or her present condition, both physical and mental; the deterrent effect on the defendant; and the defendant's potential for rehabilitation or treatment. See id. If the court determines that a period of probation is appropriate, it shall sentence the defendant to a specific sentence but then suspend that sentence and place the defendant on supervised or unsupervised probation either immediately or after the service of a period of confinement. See Tenn. Code Ann. §§ 40-35-303(c), -306(a).

As previously noted, the trial court found that four enhancement factors applied and considered those in determining the manner of service of the Defendant's sentence. A trial court may also consider the mitigating and enhancement factors set out in Tennessee Code Annotated sections 40-35-113 and -114, "as they are relevant to the [section] 40-35-103(1) considerations." State v. Batey, 35 S.W.3d 535, 588 (Tenn. Crim. App. 2000); see State v. Zeolia, 928 S.W.2d 457, 461 (Tenn. Crim. App. 1996).

On appeal, the Defendant contends that the trial court improperly applied these four factors. The State concedes that the trial court improperly considered enhancement factor (3), that the offense involved more than one victim, because the Defendant was indicted separately for each victim in this case. See State v. Williamson, 919 S.W.2d 69, 82 (Tenn. Crim. App. 1995) (holding that enhancement factor (3), the offense involved more than one victim, may not be applied to enhance a sentence where a defendant is separately convicted of the offenses committed against each victim); see also Imfeld, 70 S.W.3d at 705-06. Similarly, the State concedes that the trial court improperly considered enhancement factor (7), that the Defendant committed the offenses to gratify her desire for pleasure or excitement, because the evidence fails to support application of the factor. See State v. Sherry L. Williams, No. E2002-01288-CCA-R3-CD, 2003 WL 327508, at *5 (Tenn. Crim. App., Knoxville, Feb. 13, 2003) ("Although the defendant's drug dependency in this case undoubtedly prompted the forgeries, drug addiction, without more, is not inextricably tied to pleasure or excitement.").

However, although enhancement and mitigating factors are properly considered when determining whether to grant an alternative sentence, consideration of these factors is not as critical to an alternative sentencing determination as it would be in a sentencing length determination. See, e.g., Williams, 2003 WL 327508, at *4-10. The lower court's consideration of an inappropriate enhancement factor does not per se render the court's denial of alternative sentencing erroneous.

The State asserts, and we agree, that the evidence supports consideration of factor (2), that the Defendant was a leader in the commission of an offense involving two or more criminal actors. The Defendant called in prescriptions in the name of others, Pamela Shantel Roden Jett and Ann Luna Jett. These two women then picked up the drugs using their TennCare benefits. The record

also supports consideration of factor (14), that the Defendant abused a position of private trust. The Defendant used her position at the dental office to illegally obtain prescription drugs.

Furthermore, the trial court determined that full probation would depreciate the seriousness of the Defendant's actions and that split confinement was necessary to provide an effective deterrent. See Tenn. Code Ann. § 40-35-103(1)(A). We agree with the trial court that, "considering the number of offenses as well as the length of time over which these offenses were committed," the Defendant has not established her suitability for full probation. However, we affirm the denial of total probation on a different ground. Despite the fact that the Defendant in the case under submission did not have any prior criminal convictions on her record, her criminal behavior, because of the multiplicity of the counts and the duration of time over which they occurred, makes her an offender "who had a long history of criminal conduct." See Tenn. Code Ann. § 40-35-103(1)(B). See also Zeolia, 928 S.W.2d at 462 (multiplicity of offenses under indictment is relevant to suitability for alternative sentencing options); State v. Gregory O. Cherry, No. W2005-02078-CCA-R3-CD, 2006 WL 2466851, at *5 (Tenn. Crim. App., Jackson, Aug. 25, 2006), perm. to appeal denied (Tenn. Dec. 18, 2006).

We also note the sheer volume of Lortabs received by the Defendant during her scheme, 5236 Lortabs in all, many of which were received during a three-month time period. To disguise her ruse, the Defendant would also call in antibiotics in addition to the Lortabs because antibiotics were commonly prescribed for dental work in conjunction with pain medication. Finally, we note that the Defendant continued taking Lortabs during her pregnancy.

The trial court differentiated this case from the Prier, Wells, and Jett cases. Regardless of what occurred in those cases, our sentencing law supports the sentence imposed by the trial court in the Defendant's case. We agree with the trial court that the Defendant did not demonstrate her entitlement to full probation.

**CONCLUSION**

The trial court did not err by denying the Defendant's request for full probation and ordering her to serve part of her sentence in confinement. It appears from the record that the Defendant's sentences for each separate pharmacy victim were to be served consecutively, although the judgments do not so provide. Accordingly, we remand this case to the trial court for the sole purpose of entering corrected judgments. In all other respects, the judgments are affirmed.

_____
DAVID H. WELLES, JUDGE

-9-